# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| JUAN MIRON, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-04-4289 |
| § | |
| MARGO SLOAN, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND OPINION

Plaintiffs, a group of franchisees, sued defendants Margo Sloan, Dry Cleaning to Your Door, Corp. ("Florida DCTYD"), and Dry Cleaning To Your Door, Inc. ("Oregon DCTYD"), alleging fraud in the inducement, negligent misrepresentation, breach of contract, and violations of state consumer protection statutes.[1] Plaintiffs allege that they entered into franchise agreements for dry cleaning businesses with Florida DCTYD, based on offering disclosures that misrepresented and omitted material information about the franchises. Oregon DCTYD has moved to stay under the Federal Arbitration Act, 9 U.S.C. § 3. (Docket Entry No. 18). Plaintiffs object to arbitration on three grounds. First, they challenge the initial formation of the franchise agreements. Second, they dispute that the claims asserted in this litigation fall within the scope of the arbitration clauses. Third, they assert that

---

[1] The plaintiffs are individual and entities in Texas, Colorado, New Jersey, Delaware, Arizona, Georgia, Nevada, and Kentucky. (Docket Entry No. 21).

because Oregon DCTYD did not sign the Franchise Agreements, it cannot invoke the arbitration provision in those Agreements. (Docket Entry No. 19).

Based on the pleadings, the motions and responses, the arguments of counsel, and the applicable law, this court agrees that this litigation should be stayed to permit the parties to arbitrate. By separate order, this court dismisses this case, without prejudice, in favor of arbitration.

The reasons are set out below.

**I.     Background**

In 1994, Margo Sloan founded a dry cleaning business in Florida. The business, eventually operated as a national franchise, provided residential pick-up and delivery of dry cleaning under the registered trade name Dry Cleaning To Your Door. In 1996, Sloan formed a corporation to operate the business, Florida DCTYD. In January 2000, Sloan dissolved the Florida corporation and continued the business as a sole proprietor. In October 2003, Sloan incorporated a second time, forming Oregon DCTYD. Sloan transferred all the assets and liabilities of the business to this corporation.

This case involves the sale of franchises in 2001, 2002, and 2003. Plaintiffs received franchise offering circulars that disclosed information about the dry cleaning businesses and Sloan's business background. After receiving the offering circulars, plaintiffs entered into Standard Franchise Agreements. Under the Agreements, plaintiffs agreed to operate franchises for ten years and to make royalty and contributions to a promotion fund. Each Franchise Agreement contained the following arbitration provision:

> The parties agree that, except as precluded by applicable law, any controversy or claim that arises out of or relates to this Agreement, or any breach of this Agreement, including but not limited to, any claim that any of this Agreement is invalid, illegal, voidable or void, shall be submitted to a sole arbitrator in accordance with the rules of the American Arbitration Association and judgment upon the award may be entered in any court with jurisdiction thereof.  The preceding sentence shall not limit Master Franchise's rights or remedies in connection an action in any court of competent jurisdiction for injunctive or other provisional relief that Master Franchise deems necessary or appropriate to compel you to comply with your obligations under this Agreement or to protect the Proprietary Marks.  Unless applicable law required [sic] otherwise, arbitration shall occur in Tampa, Florida.  This arbitration provision shall be self executing.

(Docket Entry No. 18, Ex. F ¶ 25.2).

In November 2004, plaintiffs filed this suit, alleging breach the Franchise Agreements, and statutory violations.  Plaintiffs also alleged a right to rescission of the Franchise Agreements.  Plaintiffs alleged that as they operated the franchises, they had become "unhappy and frustrated with Franchisor's lack of support for the franchises; Franchisor's inattentativeness to the needs and issues faced by the franchisees; and Sloan's domineering and arrogant attitude toward the franchisees."  Plaintiffs alleged that "Franchisor's failure to protect the trademark as agreed in the Standard Franchising Agreement; Franchisor's failure to properly maintain and update, in a commercially reasonable manner, software which Franchisor required Plaintiffs lease and use in their operations; Franchisor's misuse and application of the advertising funds; all constitute breach of the Standard Franchise Agreement by Franchisor."  (Docket Entry No. 21, ¶ 66).  Plaintiffs sought rescission on the

basis of material omissions and misrepresentations in the offering circulars. The alleged misrepresentations involved the amount of franchisee investment required, the level of trademark protection for the Dry Cleaning To Your Door mark, prior franchisee bankruptcies, and the identity of the franchisor. The 2004 offering circular, issued after plaintiffs signed the Franchise Agreements, disclosed the dissolution of Florida DCTYD, stating that the corporation was dissolved in 2000. Plaintiffs claim that they were led to believe that Florida DCTYD was the franchisor. Plaintiffs allege that the Florida Secretary of State had administratively dissolved Florida DCTYD on September 26, 1997, for failing to file annual reports and that the corporation was never reinstated or restored to good standing. (Docket Entry No. 21, p. 3). As part of their complaint in this case, plaintiffs sought a declaratory judgment "finding that the Franchise Agreements entered into between Plaintiffs, and, allegedly, Florida [Corporation] are void, voidable, and/or unenforceable as Florida [Corporation] did not have the capacity to enter into legal and binding contracts at the [time] the Franchise Agreements were executed." (Docket Entry No. 21, ¶ 62).

On February 11, 2005, defendant Oregon DCTYD filed a Demand for Arbitration with the American Arbitration Association ("AAA"), seeking arbitration of all plaintiffs' claims. Oregon DCTYD moved for a stay of this litigation pending the outcome of the arbitration. (Docket Entry No. 18). In opposition, plaintiffs challenge the existence of an agreement to arbitrate, on the basis that Florida DCTYD was not in good standing when the Franchise Agreements were executed. Plaintiffs also argue that the arbitration clause does not cover their claims on the ground that the claims arise out of the offering disclosures, not the

Franchise Agreements.  Plaintiffs also argue that because neither Sloan nor Oregon DCTYD signed the Franchise Agreement containing the arbitration provision, they cannot invoke that provision.  Oregon DCTYD asserts that this court need only decide whether an agreement to arbitrate exists and whether plaintiffs' claims fall within the scope of that agreement in order to stay the litigation.[2]

Each argument and the response is examined below.

## II. The Applicable Legal Standards

The FAA provides for a stay of federal district court proceedings when an issue in the proceeding is referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  In analyzing a motion to stay under section 3, a court determines two issues: (1) whether there is a written agreement to arbitrate; and (2) whether the dispute is covered by the terms of the arbitration agreement.  *See Green Tree Financial Corporation v. Bazzle,*

---

[2] Oregon DCTYD also moved to strike plaintiffs' response in opposition to the motion to stay as untimely under the local rules. (Docket Entry No. 22).  The motion to strike is denied.

539 U.S. 444, 452 (2003). "[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay." *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir.2001)(citations omitted). The FAA embodies a strong federal policy in favor of arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). At the same time, arbitration is a matter of contract and the FAA provides for arbitration only of disputes that a party has agreed to arbitrate. *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 543 U.S. 279, 289 (2002); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'") (citations omitted).

In deciding arbitrability, a court must not consider the merits of the underlying action. *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir. 2004). As a general rule, the court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). In *Prima Paint,* the Supreme Court held that:

> [i]f the claim is fraud in the inducement of the arbitration clause itself–an issue which goes to the "making" of the agreement to arbitrate–the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint,* 388 U.S. at 403-04.  Courts have recognized that, in most cases, a signed agreement to arbitrate is sufficient to trigger the rule set out in *Prima Paint.  See Banc One,* 367 F.3d at 429.  "Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general." *Jenkins v. First American Cash Advance of Georgia, LLC,* 400 F.3d 868, 880-83 (11th Cir. 2005).  But "where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Will-Drill Resources v. Samson Resources Co.*, 352 F.3d 211 (5th Cir. 2003).

### III.   Analysis

#### A.   The Arbitration Agreement

Plaintiffs argue that they cannot be required to arbitrate under the Franchise Agreements they entered with Florida DCTYD because it was a dissolved corporation when the Franchise Agreements were executed.  Plaintiffs argue that as a dissolved corporation, Florida DCTYD did not have the power to enter into a binding contract.  In *Will-Drill,* the Fifth Circuit distinguished challenges to the enforceability and validity of a contract, which are for an arbitrator to decide, from challenges to the initial formation of a contract, which are for the court to decide.  The court stated:

> [W]here a party contends that it has not signed [or agreed to] any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to

> arbitration. . . . On the other hand, where parties have *formed* an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator.

*Will-Drill,* 352 F.3d at 218 (emphasis added); *see Banc One,* 367 F.3d at 429 (the rule of severability applies to arguments that a contract is void *ab initio* or voidable); *cf Sphere Drake Ins., Ltd. v. All Am. Ins. Co.,* 256 F.3d 587 (7th Cir. 2001) (district court should determine whether signatory had power to bind company to contract containing arbitration agreement); *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir.2003) (refusing to order arbitration where signature on agreement was not genuine).

Plaintiffs do not deny that they signed the Franchise Agreements and agreed to operate the franchises. In the complaint, plaintiffs allege that they performed under the Agreements for a number of years, but the Agreements were breached. The argument that the Agreements are unenforceable, void, or voidable because Florida DCTYD was not in good standing is a challenge that the arbitrator must decide under the *Will-Drill* analysis. Because plaintiffs' challenge is to the Agreements as a whole, not specifically to the arbitration provision, such arguments are for the arbitrator to decide under the *Prima Paint* analysis. *See Primerica Life Ins. Co. v. Brown*, 304 F.3d 469 (5th Cir. 2002). Plaintiffs' first argument against the stay fails.

### B. The Scope of the Arbitration Agreement

Plaintiffs argue that their claims arise out of the disclosure circulars, not the Franchise Agreements, and are not covered by the arbitration agreement. "[C]ourts distinguish 'narrow'

arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *Saturn Distribution Corp. v. Paramount Saturn, Ltd.,* 326 F.3d 684 (5th Cir. 2003); *United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 409 (5th Cir. 1990) (holding that "when parties choose [broad arbitration provisions such as 'any controversy or claim arising out of or relating to this agreement'], only the 'the most forceful evidence of a purpose to exclude the claim from arbitration' would render the dispute non-arbitrable'") (citation omitted).

The arbitration clause in the Franchise Agreements is broad. It covers "any" controversy or claim that "arises out of or relates to" the Franchise Agreements or "any breach" of the Agreements. Plaintiffs allege that "Franchisor's material, knowing and conscious omissions and misrepresentations made in the 2001, 2002, and 2003 Disclosures were made in order to induce Plaintiffs to purchase franchises with Franchisor." (Docket Entry No. 21, ¶ 68). Plaintiffs allege that the precontractual misrepresentations made the Franchise Agreements invalid or unenforceable. The arbitration provision specifically covers "any claim that any of the Agreement is invalid, illegal, voidable or void." (Docket Entry No. 18, Ex. F). The broad arbitration clause covers the claims asserted in this suit. Plaintiffs' second argument against the stay fails.

### C. The Nonsignatories to the Agreements

The final issue involves the ability of Oregon DCTYD and Sloan to seek a stay of this litigation. Plaintiffs claim that this court should not stay the litigation because they have no contractual obligation to arbitrate with Sloan and Oregon DCTYD. According to plaintiffs, they agreed to arbitrate claims only with Florida DCTYD. (Docket Entry No. 19, p.2).

As a general rule, a contract containing an arbitration agreement binds the parties to the contract. Whether parties who did not sign the contract containing the arbitration provision may invoke the agreement against a party is a matter for the court to decide. *See Dean Witter,* 537 U.S. at 84 (a dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for the court to decide); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation); *see also Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 354 (5th Cir. 2003) ("Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement.").

A nonsignatory may seek to compel arbitration when a signatory to an agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory, and when a signatory raises allegations of substantially interdependent and concerted misconduct by both a nonsignatory and one or more signatories to the agreement. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir.) *cert.*

*denied*, 531 U.S. 1013 (2000); *Hill v. GE Power Systems, Inc.,* 282 F.3d 343, 348 (5th Cir. 2002). Both grounds are present here.

A nonsignatory defendant may be allowed to invoke an arbitration clause against a signatory plaintiff if the claim asserted against the nonsignatory defendant is intertwined with, and dependent on, the contract that contains the arbitration agreement. *Grigson,* 210 F.3d at 526. A nonsignatory may enforce arbitration when the signatory's claims depend on the terms of the agreement that contain the arbitration provision. *Id.* Plaintiffs allege that Florida DCTYD was not in good standing. Plaintiffs seek to hold Sloan and Oregon DCTYD liable for the damages that arise out of the execution and performance of the Franchise Agreements. Because plaintiffs rely on the Franchise agreements containing the arbitration clause as a basis for recovery, the first prong of *Grigson* applies. *See Hill,* 282 F.3d at 349. Plaintiffs suggest that the breach of contract claims are merely an alternative theory of recovery, but the relief plaintiffs seek, and the claims they assert, depend on and are intertwined with the Franchise Agreements that contain the arbitration agreement. *See MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999) ("When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.").

The second prong of *Gibson* also applies. The signatory plaintiffs allege interdependent and concerted misconduct by both a nonsignatory and one or more signatories to the contract. *Grigson,* 210 F.3d at 526; *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178, n.7 (2d

Cir. 2004) ("any claim against an Owner jointly liable for the injury caused by [a] contract is inextricably intertwined with the arbitrable claim against the Owner liable under that contract"); *see also J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315 (4th Cir.1988) ("[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement"). Plaintiffs expressly agreed to a broad arbitration clause that covers the claims they have asserted against Sloan and Oregon DCTYD. Throughout the course of the franchisor-franchisee relationship, there has been a single business operated by Sloan. Plaintiffs seek damages from both Sloan and Oregon DCTYD relating to the sale of the franchises and breaches of the Franchise Agreements from 2001 to 2004, and yet argue that Florida DCTYD has been a nonentity since 1996. *See Bridas,* 345 F.3d at 356 (noting that theories for binding a nonsignatory to an arbitration agreement include assumption, agency, veil-piercing/alter ego, estoppel, and third-party beneficiary).

This case is similar to the cases in which the Fifth Circuit has applied section 3 in favor of a nonsignatory. As in *Subway,* this case involves a franchisor-franchisee relationship gone sour and an agreement between the franchisor and franchisee to arbitrate claims arising out of the franchise. The franchisee sued the franchisor and its affiliate companies. The court held that although the franchisor's affiliates had no contractual right of arbitration, a stay was proper because the claims brought by the franchisees were based on their rights under the franchise agreement. 169 F.3d at 329. In *Harvey,* the Fifth Circuit applied section 3 to a

nonsignatory corporation whose potential liability arose and was inseparable from the claims against its owner, who did sign an arbitration agreement. 199 F.3d at 795. In *Waste Management,* the court found that a nonsignatory subsidiary company was entitled to a stay of litigation in light of arbitration between former and current parent companies because the factual allegations underlying the claims against the nonsignatory subsidiary were identical to those in the arbitration proceeding. 372 F.3d at 345.

This court concludes that Oregon DCTYD is entitled to invoke the arbitration provision and a stay of this litigation in favor of arbitration. The arbitration clause is enforceable by all defendants. The claims against each defendant involve the same operative facts. The claims against the nonsignatories are "inherently inseparable" from the claims against the signatory. Continuing this litigation will have a "critical impact" on any arbitration. *See Waste Management,* 372 F.3d. at 342.

Because all the issues raised in plaintiffs' complaint must be submitted to arbitration, this case should be dismissed. The Fifth Circuit has interpreted the express terms of section 3 to mean that the court cannot deny a stay when one is properly requested. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992). "This rule, however, was not intended to limit dismissal of a case in the proper circumstances." *Id.* If all of the issues raised before the court are arbitrable, dismissal of the case is not inappropriate. As the *Alford* court explained:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all

>issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

*Id.* (quoting *Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc.*, 636 F.Supp. 750, 757 (D.Puerto Rico 1986)). As noted, the arbitration provision in this case is broad and cover all plaintiffs' claims. Dismissal without prejudice is appropriate.[3]

## IV.     Conclusion

The defendant's motion is granted, and by separate order, this case is dismissed, without prejudice.

SIGNED on May 13, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[3] Plaintiffs' motions for leave to add new parties and to file a third amended complaint are denied. (Docket Entry Nos. 10, 20).